IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF PENNSYLVANIA
PITTSBURGH DIVISION

| | | |
|---|---|---|
| **DARYL SEAGRAVES,** individually and on behalf of all persons similarly situated, | : | |
| | : | |
| | : | |
| Plaintiff, | : | Civ. A. No. 2:17-cv-01009-JFC |
| | : | |
| **vs.** | : | Judge Joy Flowers Conti |
| | : | |
| **RANGE RESOURCES CORPORATION,** | : | **ELECTRONICALLY FILED** |
| | : | |
| Defendant. | : | |
| | : | |
| | : | |

---

**UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF
CLASS AND COLLECTIVE ACTION SETTLEMENT**

---

**Michael A. Josephson**
State Bar No. 24014780
**Andrew Dunlap**
State Bar No. 24078444
**JOSEPHSON DUNLAP LAW FIRM**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
Tel: (713) 352-1100
Fax: (713) 352-3300
mjosephson@mybackwages.com
adunlap@mybackwages.com

**Joshua P. Geist**
PA. I.D. No. 85745
**GOODRICH & GEIST, P.C.**
3634 California Ave.
Pittsburgh, PA 15212
Tel: 412-766-1455
Fax: 412-766-0300
josh@goodrichandgeist.com

**Richard J. (Rex) Burch**
State Bar No. 24001807
**BRUCKNER BURCH, P.L.L.C.**
8 Greenway Plaza, Suite 1500
Houston, Texas 77046
Tel: (713) 877-8788
Fax: (713) 877-8065
rburch@brucknerburch.com

**ATTORNEYS FOR PLAINTIFF AND THE PUTATIVE CLASS MEMBERS**

**Table of Contents**

I.    INTRODUCTION ........................................................................................................... 1

II.   PROCEDURAL HISTORY, INVESTIGATION, AND SETTLEMENT ................... 2

III.  OVERVIEW OF THE MAIN ISSUE OF THE CASE .............................................. 3

IV.   TERMS AND SCOPE OF THE SETTLEMENT ...................................................... 4

V.    ARGUMENT .............................................................................................................. 5

    A.    The Settlement Agreement Should Be Preliminarily Approved By The Court .......... 5

        1.    The Standards And Procedures For Preliminary Approval ................................. 6

        2.    There Is A Strong Basis to Believe That The Settlement Is Fair, Reasonable, And
            Adequate ............................................................................................................ 7

    B.    Certification Of The Settlement Class Is Appropriate ........................................... 10

        1.    The Elements Of Rule 23(A) Are Satisfied For Settlement Purposes Only In The
            Present Case ...................................................................................................... 10

        2.    Numerosity Under Rule 23(a)(1)\ ...................................................................... 11

        3.    Commonality Under Rule 23(a)(2) .................................................................... 11

        4.    Typicality Under Rule 23(a)(3) ......................................................................... 12

        5.    Adequacy Under Rule 23(a)(4) ......................................................................... 13

        6.    The Requirements of Rule 23(b)(3) Are Met for Settlement Purposes .............. 14

    C.    The Proposed Notice Provides Adequate Notice To Members Of The Class ........ 16

        1.    The Notice Satisfies Due Process ...................................................................... 16

        2.    The Proposed Class Notices Are Accurate, Informative And Easy to Understand
            ............................................................................................................................ 17

D.    A Final Fairness Hearing Should Be Scheduled.............................................................18

VI.    PRELIMINARY AWARD OF ATTORNEYS' FEES AND COSTS............................18

A.    The Attorney Fees And Costs Requested Are Reasonable And Customary..............19

1.    The Size Of The Fund Created And The Number Of Beneficiaries, As Well As The Value Of The Benefits Supports The Requested Fee ............................... 20

2.    The Skill and Efficiency of Class Counsel That Enabled Them to Obtain This Result Supports the Requested Fee ................................................................. 20

3.    The Awards In Similar Cases Supports The Requested Fee............................. 21

4.    Class Counsel's Costs Should Be Approved .................................................... 22

B.    This Settlement Is On Par With Recent Settlements Involving Oil and Gas Companies ........................................................................................................... 23

VII.    CONCLUSION ..........................................................................................................23

## Table of Contents
### Cases

*Adams v. Inter-Con Security Sys., Inc.*, No. C-06-5428 MHP, 2007 WL 3225466, at *3-4 (N.D. Cal. Oct. 30, 2007) .................................................................................................................................17

*Amchem Prods. v. Windsor*, 521 U.S. 591, 617 (1997)..............................................................6, 10, 14

*Andrews, et al., v. Pacific Process Systems, Inc.*, C.A. 2:14-cv-01308-CRE (W.D. Pa. Sept. 10, 2015) .........23

*Asbestos Sch. Litig.*, 104 F.R.D. 422, 429 (E.D. Pa. 1984).......................................................................12

*Austin v. Pennsylvania Dep't of Corrs.*, 876 F.Supp 1437, 1472 (E.D. Pa. 1995)...........................................8

*Baby Neal v. Casey*, 43 F.3d 48, 56 (3d Cir. 1994) ...............................................................................11

*Barnes v. American Tobacco Co.*, 161 F.3d 127 (3d Cir. 1998)..................................................................11

*Bearden v. Precision Air Drilling Services, Inc.*, No. 2:11-cv-01511- NBF (W.D. Pa. Sept. 26, 2012) (Fischer, J.)...........................................................................................................................................21

*Bogosian v. Gulf Oil Corp.*, 561 F.2d 434 (3d Cir. 1977) ........................................................................12

*Bredbenner v. Liberty Travel, Inc.*, 2011 WL 1344745 (D.N.J. Apr. 8, 2011) ................................... 21, 22

*Brumley v. Camin Cargo Control, Inc.*, No. CIV.A. 08-1798 JLL, 2012 WL 1019337, at *12 (D.N.J. Mar. 26, 2012) ...................................................................................................................................21

*Caudell v. RDL Energy Services, LP*, No. 2:11-cv-01523-JFC (W.D. Pa. Jul. 30, 2012) (Conti, J.) ..........21

*Chemi v. Champion Mortg.*, C.A. 05-cv-1238, 2009 WL 1470429, at *11 (D.N.J. May 26, 2009) ...........20

*Chiang v. Veneman*, 385 F.3d 256, 265 (3d Cir. 2004) .........................................................................12

*Cook v. Rockwell Int'l Corp.*, 151 F.R.D. 378 (D. Colo. 1993) .................................................................13

*Cotton v.Hinton*, 559 F.2d 1326 (5th Cir. 1977) ....................................................................................8

*Cullen v. Whitman Medical Corp.*, 197 F.R.D. 136, 150 (E.D. Pa. 2000)................................................21

*Davis v. Abercrombie & Fitch Co.*, No. 08 CV 01859(PKC)(AJP), 2009 WL 1542552, at *1-4 (S.D.N.Y. June 2, 2009)...................................................................................................................................17

*Dietrich v. Bauer*, 192 F.R.D. 119 (S.D.N.Y. 2000) .............................................................................15

*Erie County Retirees Assoc. v. County of Erie. Pa.*, 192 F. Supp. 2d 369, 382-83 (W.D. Pa. 2002) (McLaughlin, J.).......................................................................................................................21

*Fisher Brothers v. Phelps Dodge Indus., Inc.*, 604 F. Supp. 446 (E.D. Pa. 1985)..........................................8

*Frost v. Oil States Energy Services, LLC*, C.A. 4:15-cv-01100, ECF No. 43 (S.D. Tex. Nov. 19, 2015) ..23

*Gen. Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 157 n.l3 (1982) .......................................................12

*Girsh v. Jepson*, 521 F.2d 153 (3d Cir. 1975) .........................................................................................7

*Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 195 (3d Cir. 2000) ..................................................19

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) ....................................................................10

*Hayworth v. Blondery Seagraves & Co.*, 980 F.2d 912, 923 (3d Cir. 1992)..............................................13

*Hickel, et al., v. Costy's Energy Services, LLC*, C.A. 2:15-cv-00130-MRH, ECF No. 43 (W.D. Pa. Oct. 30, 2015)...................................................................................................................................23

*Hochschuler v. G.D. Searle & Co.*, 82 F.R.D. 339 (N.D. Ill. 1978) .......................................................15

*Hughes v. Gulf Interstate Field Servs., Inc.*, 878 F.3d. 183, No. 17-3112, 2017 WL 6460123, at *1 (6th Cir. Dec. 19, 2017) ......................................................................................................................4

*In re AT& T Corp. Sec. Litig.*, 455 F.3d 160, 164 (3d Cir. 2006) ........................................................19

*In re Cendant Corp. Sec. Litig.*, 404 F.3d 173, 187 (3d Cir. 2005) ......................................................19

*In re Coordinated Pretrial Proceedings in Antibiotic Antitrust Actions*, 410 F. Supp. 659 (D. Minn. 1974) ......8

*In re Diet Drugs Prod. Liab. Litig.*, 582 F.3d 524, 540 (3d Cir. 2009)...................................................19

*In re Gen. Motors Corp. Pick-up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 785 (3d Cir. 1995)........5

*In re Inter-Op Prosthesis Liab. Litig.*, 204 F.R.D. 359, 379 (N.D. Ohio 2001)........................................10

*In re Linerboard Antitrust Litig.*, 292 F.Supp.2d 631, 642 (E.D. Pa. 2003) .............................................9

*In re M.L. Stern Overtime Litig.*, No. 07-CV-0118-BTM (JMA), 2009 WL 995864, at *6-7 (S.D. Cal. Apr. 13, 2009) ...................................................................................................................................17

*In re NASDAQ Market Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1999) ............................10

*In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 317 (3d Cir. 1998) .............5

*In re Sugar Industry Antitrust Litig.*, 73 F.RD. 322, 344 (E.D. Pa. 1976) ............................14

*In re Telectronics Pacing Systems*, 172 F.R.D. 271, 287-88 (S.D. Ohio 1997) ............................15

*Keen v. DXP Enterprises, Inc.,* No. 5:15-CV-137-OLG, 2016 WL 3253895, at \*5 (W.D. Tex. June 6, 2016) ............................4

*Kilgo v. Bowman Transp., Inc.,* 789 F.2d 859, 878 (11th Cir. 1986) ............................11

*Krell v. Prudential Ins. Co.*, 148 F.3d 283, 333 (3d Cir. 1998) ............................19

*Lake v. First National Bank*, 900 F. Supp. 726 (E.D. Pa. 1995) ............................9

*Lewis v. Curtis*, 671 F.2d 779 (3d Cir. 1982) ............................13

*Liberty Lincoln Mercury, Inc. v. Ford Mktg. Corp.,* 149 F.R.D. 65, 73 (D.N.J. 1993) ............................11

*Marisol A. v. Giuliani*, 126 F.3d 372 (2d Cir.1997) ............................13

*Martin v. Selker Bros.*, 949 F.2d 1286, 1293 (3d Cir. 1991) ............................3

*Oh v. AT&T Corp.*, 225 F.R.D. 142, 154 (D.N.J. 2004) ............................22

*Protective Comm. for Indep. S'holders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424-25 (1968) ....5

*Prudential II*, 148 F.3d at 316-17 ............................passim

*Richard v. Mudtech Servs., L.P.,* No. 4:15-cv-03239, ECF 64 at 9 (S.D. Tex. Sept. 1, 2017) ............................4

*Slanina v. William Penn Parking Corp.,* 106 FRD 419, 423 (WD PA 1984) ............................11

*Slomovics v. All For a Dollar, Inc.,* 906 F.Supp 146, 149 (E.D.N.Y. 1995) ............................9

*Smiley, et al., v. ROC Service Company, LLC*, C.A. 2:14-cv-01539-CRE, ECF No. 53 (W.D. Pa. Sept. 22, 2015) ............................23

*Stivers v. Office Depot*, No. 12-cv-1534 (W.D. Pa. Sept. 19, 2013) ............................21

*Stoetzner v. U.S. Steel Corp.*, 897 F.2d 115 (3d Cir. 1990) ............................7

*Terry v. Tri-State Wireline, LLC, C.A. 2:15-cv-00382-NBF, ECF No. 31 (W.D. Pa. Jan. 14, 2016)* ............................23

*Thomas v. Allis-Chalmers*, No. 2:10-cv-01591-RCM (W.D. Pa. Sept. 11, 2012) (Mitchell, J.) ............................21

*Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227 (9th Cir. 1996) ............................18

*Walsh v. Great Atlantic & Pacific Tea Co.,* 726 F.2d 956 (3d Cir. 1983) ............................7

*Weiss v. Mercedes-Benz of N Am. Inc.,* 899 F. Supp. 1297 (D.N.J. 1995) ............................9

*Weiss v. York Hosp.,* 745 F.2d 786, 809-10 (3d Cir. 1984) ............................9, 13

*Wetzel v. Liberty Mut. Ins. Co.,* 508 F.2d 239 (3d Cir. 1975) ............................11, 13

*Williams v. Aramark Sports, LLC*, No. 10-cv-1044, 2011 WL 4018205, at \*10 (E.D. Pa. Sept. 9, 2011) ............................22

*Williams v. First Nat'l Bank*, 216 U.S. 582, 595 (1910) ............................5

*Wright v. Linkus Enterprises, Inc.*, 259 F.R.D. 468, 476 (E.D. Cal. 2009) ............................17

*Zinberg v. Washington Bancorp, Inc.*, 138 F.R.D. 397, 405 (D.N.J. 1990) ............................11

### Statutes

29 U.S.C. § 216(b) ............................2, 18, 21, 22

43 P.S. § 333.113 ............................22

### Other Authorities

1 A. Conte & H. Newberg, Newberg on Class Actions (Fourth), § 3.10, at 272-74 (2002) ............................12

3 Newberg on Class Actions (Fourth), §7.24 at pp. 78-79 (2002) ............................14

4 Newberg on Class Actions (Fourth) §§ 8.21, 8.39 ............................18

MANUAL FOR COMPLEX LITIGATION, FOURTH, §13.14, at 172-73 (2004) ............................6, 7

### Rules

Fed.R.Civ.P. 23 ............................Passim

# I.  INTRODUCTION

Plaintiffs Daryl Seagraves ("Seagraves," "Plaintiff") files this Unopposed Motion for Preliminary Approval of Class and Collective Action Settlement, Certification of Settlement Classes, Issuance of Notice, and Attorneys' Fees and Costs ("Motion for Preliminary Approval") and in support would show as follows:

After months of extensive negotiations, interviews, discussions, information gathering from numerous class members, data review, document production, analysis, a full day mediation with experienced wage and hour mediator Carole Katz, and arm's length negotiations after mediation, the Parties reached a settlement of all claims at issue in this lawsuit memorialized in the attached Settlement Agreement and Release ("the Settlement Agreement"). *See* Ex. 1. The settlement is for a maximum amount of $3.925 million. The proposed class covers all Plaintiffs, Opt-in Plaintiffs, and current or former Drilling and/or Completions Consultants who worked for Defendant Range Resources Corporation and/or Range Resource–Appalachia, LLC (collectively, "Range Resources" or "Defendant") at any time between August 2, 2014 through the date of the preliminary approval order. Specifically, the class memebrs are listed by name on Exhibit 1-C.

As described in the Settlement Agreement, Exhibit 1, this is a hybrid FLSA and Rule 23 settlement. To efftuate the settlement, the Parties propose sending a Notice to the class members by mail and email that informs them of the terms of the settlement, their settlement share, and how to participate.

It is important to note that Settlement Class Members do not have to do anything to receive a settlement payment. All Settlement Class Members will receive a settlement payment so long as they do not opt-out or provide an objection that is sustained.

1

Also important is that the Settlement Class Members' rights are only extinguished if they negotiate the settlement check. Settlement Class Members who do not negotiate the settlement checks will preserve their Fair Labor Standards Act ("FLSA") and Pennsylvania Minimum Wage Act ("PMWA") claims.

## II. PROCEDURAL HISTORY, INVESTIGATION, AND SETTLEMENT

On August 2, 2017, Plaintiff Seagraves, on behalf of himself and all other similarly situated employees, filed a class and collective action lawsuit against Range Resources alleging violations of the Fair Labor Standards Act ("FLSA") and Pennsylvania Minimum Wage Act ("PMWA"). ECF No. 1. Subsequently, Kevin Carter, Earl Ray Lee, Jeffrey Vanata, Daniel Avila, Donnie Matte, Daniel Rose, and Zachary James joined the action. ECF Nos. 5, 9, 15, 26, and 27.

Together, Seagraves and the opt-in plaintiffs sought damages for unpaid wages, unpaid overtime compensation, liquidated damages, other damages, attorneys' fees and litigation costs under the FLSA and Pennsylvania wage and hour laws; conditional certification under Section 216(b) of the FLSA; and class certification under Federal Rule of Civil Procedure 23.

On January 30, 2018, the Parties mediated the case on a class and collective action basis. ECF No. 24. Range Resources provided substantial compensation documents, spreadsheets, and other information regarding to the pay practices at issue. Based on the information exchanged, Plaintiffs' counsel Josephson Dunlap Law Firm and Bruckner Burch, PLLC ("Class Counsel") were able to do a complete review of Range Resources' pay practices. Class Counsel prepared a damage analysis and compiled a spreadsheet with its assessment of back pay owed to each class member.

Class Counsel's investigation ultimately revealed that Plaintiff and his fellow coworkers (the Class Members) consisted of Drilling and/or Completions Consultants ("Consultants"). Plaintiff alleged that these employees performed largely technical and manual labor type job duties and

2

routinely worked 12 hours a day for 5 to 7 days a week. Class Counsel also learned that Range Resources decided to reclassify numerous workers after the filing of this lawsuit.

After the investigation concluded and all liability and damage information was exchanged, the Parties engaged in good faith negotiations and mediation attempting to resolve this case. The Parties reached an ultimate settlement on behalf of all current and potential Consultants paid a day rate from August 2, 2014 to the present. As described in detail below, the settlement is intended to compensate Plaintiff and all current and potential Class Members for their back wages in the form of unpaid overtime, liquidated damages, attorneys' fees, and costs.

With the settlement finalized, the Parties now seek the Court's approval of the agreements entered into by the Parties.

### III. OVERVIEW OF THE MAIN ISSUE OF THE CASE

Unlike ordinary wage and hour cases, the ultimate burden in this case rests with Seagraves. Seagraves contends he is an employee of Range Resources and it is his burden to prove, under the economic realities test, that Range Resources is his employer. *See Martin v. Selker Bros.*, 949 F.2d 1286, 1293 (3d Cir. 1991) (holding that it is Plaintiff's burden to demonstrate employee status using the following elements: 1) the degree of the alleged employer's right to control the manner in which the work is to be performed; 2) the alleged employee's opportunity for profit or loss depending upon his managerial skill; 3) the alleged employee's investment in equipment or materials required for his task, or his employment of helpers; 4) whether the service rendered requires a special skill; 5) the degree of permanence of the working relationship; 6) whether the service rendered is an integral part of the alleged employer's business.). So from the outset, this case is more difficult than a typical employee wage and hour case where it is the employer's burden to prove the exemption applies or a certain piece of compensation was properly excluded from the overtime rate.

3

If Seagraves proves he is an employee of Range Resources, the case is likely resolved. No white collar exemptions apply to Seagraves because he was only paid a day rate. This means he does not meet the salary basis requirement. *See Hughes v. Gulf Interstate Field Servs., Inc.*, 878 F.3d. 183, No. 17-3112, 2017 WL 6460123, at *1 (6th Cir. Dec. 19, 2017) (whether a worker receives a "guaranteed" salary "does matter" and is a prerequisite to a white collar exemption defense); *Keen v. DXP Enterprises, Inc.,* No. 5:15-CV-137-OLG, 2016 WL 3253895, at *5 (W.D. Tex. June 6, 2016) (holding that a day rate does not meet the salary basis test); *see also Richard v. Mudtech Servs., L.P.*, No. 4:15-cv-03239, ECF 64 at 9 (S.D. Tex. Sept. 1, 2017) ("MudTech's engineers are paid a per diem and not guaranteed a set number of hours, meaning that they receive no money for the weeks that they do not work at all… This belies the point of having a salary, since they are not guaranteed a regular fixed rate. So even though the engineers almost always earned more than the FLSA minimum, they do not meet the regulatory definitions for the administrative exemption.").

## IV. TERMS AND SCOPE OF THE SETTLEMENT

This settlement is designed to provide Plaintiff and Class Members compensation for the overtime hours allegedly worked but unpaid by Range Resources. *See generally* the Settlement Agreement, Ex. 1. The Settlement Class Members who worked for Range Resources over the statutory time period will receive a notice of the class action settlement by mail and email, an estimated amount of the settlement to which they are entitled, and information to accept, reject, or object to the settlement. *See* Notice, Ex. A-1. The Class Members also have the opportunity to object and attend the fairness hearing. Those who wish to participate in the settlement will be given thirty days to opt-out or object. If a Settlement Class Members does nothing, he or she will receive a settlement payment.

The breakdown of the settlement is as follows:

Maximum Settlement Amount:          $3,925,000.00

Attorney Fees:                      $1,308,333.33

| | |
|---|---|
| Attorney Costs: | $13,448.09 |
| Enhancement Award: | $5,000.00 |
| Settlement Administration Costs: | $20,000.00 |
| Net Settlement Amount: | $2,578,218.58 |

In exchange for accepting the Individual Settlement Award, the approximately 116 Plaintiffs and Class Members will release any and all federal and state wage related claims against Range Resources. Those class members who opt-out, submit an objection that is sustained, or do not cash the settlement award, will have their claims under the PMWA and FLSA preserved.

## V.  ARGUMENT

### A.  The Settlement Agreement Should Be Preliminarily Approved By The Court

By this Motion, Seagraves seeks, and Range Resources does not oppose, preliminary approval of the Settlement Agreement. "Compromises of disputed claims are favored by the courts." *Williams v. First Nat'l Bank*, 216 U.S. 582, 595 (1910); *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 317 (3d Cir. 1998) ("Prudential II"). Settlement spares the litigants the uncertainty, delay and expense of a trial, while simultaneously reducing the burden on judicial resources. Federal Rule 23(e) provides that the Court must approve any settlement of a class action. In a class action, the "court plays the important role of protector of the [absent members'] interests, in a sort of fiduciary capacity." *In re Gen. Motors Corp. Pick-up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 785 (3d Cir. 1995) ("GM Trucks"). Indeed, "[t]he law favors settlement, particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation." *Id.* at 784. The ultimate determination whether a proposed class action settlement warrants approval resides in the Court's discretion. *Protective Comm. for Indep. S'holders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424-25 (1968). As discussed more fully below, at this stage of preliminary approval, there is clear evidence that the Settlement Agreement is fair and should be preliminarily approved.

1.  <u>The Standards And Procedures For Preliminary Approval</u>

Rule 23(e) of the Federal Rules of Civil Procedure provides the mechanism for settling a class action, including, as here, through a class certified for settlement purposes:

> The claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval. The following procedures apply to a proposed settlement, voluntary dismissal, or compromise:
>
> > (1)  The court must direct notice in a reasonable manner to all class members who would be bound by the proposal.
> >
> > (2)  If the proposal would bind class members, the court may approve it only after a hearing and on finding that it is fair, reasonable, and adequate.
> >
> > (3)  The parties seeking approval must file a statement identifying any agreement made in connection with the proposal.
> >
> > (4)  If the class action was previously certified under Rule 23(b)(3), the court may refuse to approve a settlement unless it affords a new opportunity to request exclusion to individual class members who had an earlier opportunity to request exclusion but did not do so.
> >
> > (5)  Any class member may object to the proposal if it requires court approval under this subdivision (e); the objection may be withdrawn only with the court's approval.

Fed.R.Civ.P. 23(e); *Amchem Prods. v. Windsor*, 521 U.S. 591, 617 (1997); *Prudential II*, 148 F.3d at 316.

In determining whether preliminary approval is warranted, the primary issue before the Court is whether the proposed settlement is within the range of what might be found fair, reasonable and adequate, so that notice of the proposed settlement should be given to class members, and a hearing scheduled to determine final approval. *See* MANUAL FOR COMPLEX LITIGATION, FOURTH, §13.14, at 172-73 (2004) ("MANUAL FOURTH") (at the preliminary approval stage, "[t]he judge must make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms and must direct the preparation of notice of the certification, proposed settlement, and date of the final fairness hearing."). Preliminary approval permits notice of the hearing on final settlement approval to be given to the class members, at which time class members and the settling

parties may be heard with respect to final approval. *Id.* at 322. Preliminary approval is therefore the first step in a two-step process required before a class action may be finally settled. *Id.* at 320. In some cases, this initial assessment can be made on the basis of information already known to the court and then supplemented by briefs, motions and an informal presentation from the settling parties. *Id.* at 320-21.

In deciding whether a settlement should be preliminarily approved under Section 16(b) of the FLSA and Rule 23, courts look to whether there is a basis to believe that the more rigorous final approval standard will be satisfied. *See* MANUAL FOURTH §21.633, at 321 ("Once the judge is satisfied as to the certifiability of the class and the results of the initial inquiry into the fairness, reasonableness, and adequacy of the settlement, notice of a formal Rule 23(e) fairness hearing is given to the class members."). The standard for final approval of a settlement consists of showing that the settlement is fair, reasonable, and adequate. *Prudential II*, 148 F.3d at 316-17; *GM Trucks*, 55 F.3d at 785; *Stoetzner v. U.S. Steel Corp.*, 897 F.2d 115 (3d Cir. 1990); *Walsh v. Great Atlantic & Pacific Tea Co.*, 726 F.2d 956 (3d Cir. 1983); *Girsh v. Jepson*, 521 F.2d 153 (3d Cir. 1975).

2.  <u>There Is A Strong Basis to Believe That The Settlement Is Fair, Reasonable, And Adequate</u>

The Third Circuit has adopted the following four-factor test to determine the preliminary fairness of a class action settlement:

      (1)    the negotiations occurred at arm's length;

      (2)    there was sufficient discovery;

      (3)    the proponents of the settlement are experienced in similar litigation; and

      (4)    only a small fraction of the class objected.

*GM Trucks*, 55 F.3d at 785.[1]

---

[1]     For final approval, the Court reviews the settlement in light of the factors established by *Girsh*, 521 F.2d at 1157: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed;

The Settlement Agreement meets all these tests. It is beyond dispute that this settlement was the result of arm's-length negotiations, conducted by experienced counsel for all Parties and after more than sufficient informal discovery had been undertaken. *See* Declaration of Andrew W. Dunlap ("Dunlap Dec.") at ¶¶ 3-23, attached as Exhibit 2. The settlement was negotiated on behalf of Plaintiff by a team of attorneys who have been vigorously prosecuting this and similar claims for many years. *Id.* These attorneys have had considerable experience in prosecuting wage and hour claims previously, both federal and state claims, and, in this case, were particularly well informed as to the facts and circumstances of the litigation.   Range Resources is also represented by counsel experienced in collective and class employment litigation. Christian Antkowiak, counsel from Buchanan Ingersoll & Rooney, P.C., has represented and currently represents employers in similar cases in many jurisdictions. *Id.* Thus, the arm's length consideration is met, which is often shaped by the experience and reputation of counsel, who have researched the issues and are knowledgeable regarding the facts of the litigation. *Austin v. Pennsylvania Dep't of Corrs.*, 876 F.Supp 1437, 1472 (E.D. Pa. 1995) ("in determining the fairness of a proposed settlement, the court should attribute significant weight to the belief of experienced counsel that settlement is in the best interests of the class"); *GM Trucks*, 55 F.3d at 787-88; *Cotton v.Hinton*, 559 F.2d 1326 (5th Cir. 1977); *In re Coordinated Pretrial Proceedings in Antibiotic Antitrust Actions*, 410 F. Supp. 659 (D. Minn. 1974) ("The recommendation of experienced antitrust counsel is entitled to great weight."); *Fisher Brothers v. Phelps Dodge Indus., Inc.,* 604 F. Supp. 446 (E.D. Pa. 1985) ("The professional judgment of counsel involved in the litigation is entitled to significant weight.").

---

(4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.  *See also In re Rite Aid Corp. Sec. Litig.,* 396 F.3d 294, 301 (3d Cir. 2005).

This settlement was, moreover, specifically negotiated by experienced counsel to meet all the requirements of the FLSA collective action provisions and the class action provisions of Rule 23, and specifically to provide administrative procedures to assure to all class members equal and sufficient due process rights. Accordingly, the settlement was informed by the vigorous prosecution of the case by experienced and qualified counsel and was not the product of collusive dealings. Further, continued litigation would be long, complex and expensive, and a burden to Court dockets. *See Lake v. First National Bank*, 900 F. Supp. 726 (E.D. Pa. 1995) (expense and duration of litigation are factors to be considered in evaluating the reasonableness of a settlement); *Weiss v. Mercedes-Benz of N Am. Inc.,* 899 F. Supp. 1297 (D.N.J. 1995) (burden on crowded court dockets to be considered). A trial on the merits would be very expensive for both Seagraves and Range Resources, and would not even necessarily end the litigation, as the losing party would have the right to appeal. *See In re Linerboard Antitrust Litig.*, 292 F.Supp.2d 631, 642 (E.D. Pa. 2003) (where the protracted nature of the action would cause a lengthy delay in recovery, the "substantial and immediate benefits" to class members favored approval); *Slomovics v. All For a Dollar, Inc.*, 906 F.Supp 146, 149 (E.D.N.Y. 1995) (where litigation had potential to be lengthy, and was likely to be expensive, settlement was in best interest of class members).

Further, the settlement was based on an exchange of a substantial amount of information pertaining to Range Resources' vendor's actual pay practices, payroll records, and virtually all of the data for the class. *See* Dunlap Dec. at ¶13, Ex. 2. Additionally, the Parties interviewed current and former workers of Range Resources and discussed the merits of the allegations in this case at length. *Id.* This information exchange allowed the Parties to reach a fair settlement that provides just compensation to the workers without the risk and costs associated with certification proceedings, trial and an eventual appeal.

Finally, there is no reason to doubt the fairness of the proposed Stipulation as resulting from arm's length negotiations. Not only was the Settlement Agreement the result of good faith, arm's length negotiations between experienced and informed counsel on both sides, but the Settlement Agreement and its material terms were negotiated with the substantial assistance from an experienced wage and hour mediator Carole Katz. *See* Dunlap Dec. at ¶ 22, Ex. 2. Indeed, the proposed Settlement Agreement does not unduly grant preferential treatment to the class representative and it does not provide excessive compensation to counsel. *See In re Inter-Op Prosthesis Liab. Litig.*, 204 F.R.D. 359, 379 (N.D. Ohio 2001). Accordingly, the standards for preliminary approval are met in this case and the Court should grant Plaintiff's motion in its entirety. *see also In re NASDAQ Market Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1999).

**B. Certification Of The Settlement Class Is Appropriate**

Pursuant to the Settlement Agreement, and in accordance with the model of other similar wage and hour cases that counsel have resolved in the federal courts, the Parties have stipulated, for settlement purposes only, to all Plaintiffs, Opt-in Plaintiffs, and current or former Drilling and/or Completions Consultants who worked for Range Resources at any time between August 2, 2014 through the date of the preliminary approval order. Specifically, the class memebrs are listed by name on Exhibit 1-C.

The Supreme Court and various circuit courts have recognized that the benefits of a proposed settlement can only be realized through the certification of a settlement class. *See Amchem*, 521 U.S. at 591; *Prudential II*, 148 F.3d at 283; *Hanlon v. Chrysler Corp.,* 150 F.3d 1011 (9th Cir. 1998). Here, and for settlement purposes only, Seagraves submits that the elements of Rule 23 are met with respect to the proposed settlement, which, accordingly, warrants settlement class certification.

1. The Elements Of Rule 23(A) Are Satisfied For Settlement Purposes Only In The Present Case

In order for a lawsuit to be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, the Representative Plaintiffs must establish each of the four threshold requirements of subsection (a) of the Rule, which provides:

> (1)    the class is so numerous that joinder of all members is impracticable;
>
> (2)    there are questions of law or fact common to the class;
>
> (3)    the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
> (4)    the representative parties will fairly and adequately protect the interests of the class.

Fed. R Civ. P. 23(a); *see e.g. Barnes v. American Tobacco Co.,* 161 F.3d 127 (3d Cir. 1998); *Prudential II*, 148 F.3d at 308-09; *Wetzel v. Liberty Mut. Ins. Co.*, 508 F.2d 239 (3d Cir. 1975). Here, Plaintiff submits that all four elements are satisfied for purposes of certifying the settlement Class.

    2.    <u>Numerosity Under Rule 23(a)(1)\</u>

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." *Liberty Lincoln Mercury, Inc. v. Ford Mktg. Corp.,* 149 F.RD. 65, 73 (D.N.J. 1993) ("precise enumeration of the members of a class is not necessary."); *Zinberg v. Washington Bancorp, Inc.*, 138 F.R.D. 397, 405 (D.N.J. 1990) ("It is proper for the court to accept common sense assumptions in order to support a finding of numerosity."). Numerosity is satisfied here because the Pennsylvania Class includes approximately 115 individuals. *See Slanina v. William Penn Parking Corp.,* 106 FRD 419, 423 (WD PA 1984) (certifying class of 25 persons); *Kilgo v. Bowman Transp., Inc.,* 789 F.2d 859, 878 (11th Cir. 1986) (affirming certification of class of at least 31 individual class members).

    3.    <u>Commonality Under Rule 23(a)(2)</u>

Rule 23(a)(2) requires that there be "questions of law or fact common to the class." The commonality requirement is met if Plaintiffs' grievances share common questions of law or of fact. *Baby Neal v. Casey*, 43 F.3d 48, 56 (3d Cir. 1994). A plaintiff is not required to show that all class members' claims are identical to each other as long as there are common questions at the heart of the

case. "Factual differences among the claims of the putative class members do not defeat certification." *Baby Neal*, 43 F .3d at 56; *Prudential II*, 148 F.3d 283. Indeed, a single common question is sufficient to satisfy the requirements of Rule 23(a)(2). *See* 1 A. Conte & H. Newberg, Newberg on Class Actions (Fourth), § 3.10, at 272-74 (2002); accord *Baby Neal*, 43 F.3d at 56. Commonality exists where the class claims arise "from a 'common nucleus of operative fact' regardless of whether the underlying facts fluctuate over the class period and vary as to individual claimants." *In re Asbestos Sch. Litig.*, 104 F.R.D. 422, 429 (E.D. Pa. 1984). As the Third Circuit has noted, this requirement is "not a high bar." *Chiang v. Veneman*, 385 F.3d 256, 265 (3d Cir. 2004). According to Plaintiff, commonality is met here insofar as the claims of the Class Representative and the members of the class are predicated on the core common issue as to whether Defendant's alleged employees were properly classified as independent contractors when paid a day rate, without any salary. At least in the settlement context, this is sufficient to meet the Rule 23(a)(2) standard of commonality. Specifically, Plaintiff, like his co-workers, were treated as independent contractors and only paid a day rate. They did not receive additional compensation for any hours worked over forty in a workweek. Thus, based on his work experiences and allegations against Range Resources, the commonality element is satisfied.

4. Typicality Under Rule 23(a)(3)

Rule 23(a)(3) requires that a representative plaintiff's claims be "typical" of those of other class members. The commonality and typicality requirements of Rule 23(a) "tend to merge." *Gen. Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 157 n.13 (1982). The requirement of this subdivision of the rule, along with the adequacy of representation requirement set forth in subsection (a)(4), is designed to assure that the interests of unnamed class members will be protected adequately by the named class representative. *Id.*; *Prudential II*, 148 F.3d at 311; *Bogosian v. Gulf Oil Corp.*, 561 F.2d 434 (3d Cir. 1977); *Asbestos School Litigation*, 104 F.R.D. at 429-30. The typicality requirement "is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal

12

arguments to prove the defendant's liability." *Marisol A. v. Giuliani*, 126 F.3d 372 (2d Cir.1997).
"Factual differences will not render a claim atypical if the claim arises from the same event or practice
or course of conduct that gives rise to the claims of the class members, and it is based on the same
legal theory." *Hayworth v. Blondery Seagraves & Co.*, 980 F.2d 912, 923 (3d Cir. 1992). In other words,
typicality is demonstrated where a plaintiff can "show that two issues of law or fact he or she shares
in common with the class occupy the same degree of centrality to his or her claims as to those of
unnamed class members." *Weiss v. York Hosp.*, 745 F.2d 786, 809-10 (3d Cir. 1984). Here, too, this
requirement is met by the proposed Settlement Class to the extent that the claims, for settlement
purposes only, arise from a common course of conduct alleged by Plaintiff, e.g., Defendant's alleged
practice of failing to compensate the Class for all hours worked as a result of the uniformly applied
day rate practice applicable to all independent contractor Class Members.

5.   Adequacy Under Rule 23(a)(4)

The final requirement of Rule 23(a) is set forth in subsection (a)(4), which requires that "the
representative parties will fairly and adequately protect the interests of the class." The Third Circuit
has ruled that:

> Adequate representation depends on two factors: (a) the plaintiff's attorney must
> be qualified, experienced and generally able to conduct the proposed litigation; and
> (b) the plaintiff must not have interests antagonistic to those of the class.

*Weiss*, 745 F.2d at 811, quoting *Wetzel.*, 508 F.2d at 247; *see also Prudential II*, 148 F.3d at 312. These
two components are designed to ensure that absentee class members' interests are fully pursued. The
existence of the elements of adequate representation are presumed and "the burden is on the
defendant to demonstrate that the representations will be inadequate." *Asbestos School Litigation*, 104
F.R.D. at 430, *citing Lewis v. Curtis*, 671 F.2d 779 (3d Cir. 1982); *Cook v. Rockwell Int'l Corp.*, 151 F.R.D.
378 (D. Colo. 1993) (quoting 3 Newberg on Class Actions (Fourth), §7.24 at pp. 78-79 (2002)).

Adequacy is easily met here with regard to the Settlement Class Counsel's qualifications – Plaintiff's attorneys, proposed Settlement Class Counsel, are exceedingly experienced and competent in complex litigation and have an established track record in wage and hour cases. *See* Dunlap Dec. at ¶¶ 3-11, Ex. 2. In addition, there is no evidence that the Settlement Class Representative has interests inconsistent to that of the settlement class. Indeed, Plaintiff has dutifully assisted his Counsel in this case and meets the criteria for participation in this settlement. Having demonstrated that each of the mandatory requirements of Rule 23(a) are satisfied here for settlement purposes only, Plaintiff now turns to consideration of the factors which, independently, justify class treatment of this action for present purposes under subdivision 23(b)(3) of the rule.

6.   The Requirements of Rule 23(b)(3) Are Met for Settlement Purposes

Plaintiff's proposed Class also meets the requirements of Rule 23(b)(3). Under 23(b)(3) a class action may be maintained if:

> the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

Fed. R. Civ. P. 23(b)(3).

"The Rule 23(b)(3) predominance inquiry tests whether proposed Class is sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. Although Rule 23(b)(3) requires that common issues of law and fact predominate, it does not require that there be an absence of any individual issues. *In re Sugar Industry Antitrust Litig.*, 73 F.RD. 322, 344 (E.D. Pa. 1976). The Court must find that "the group for which certification is sought seeks to remedy a common legal grievance."

*Hochschuler v. G.D. Searle & Co.*, 82 F.R.D. 339 (N.D. Ill. 1978); *Dietrich v. Bauer*, 192 F.R.D. 119 (S.D.N.Y. 2000) (in determining whether common issues of fact predominate, "a court's inquiry is directed primarily toward whether the issue of liability is common to members of the class"). Rule 23(b)(3) does not require that all questions of law or fact be common. *See In re Telectronics Pacing Systems*, 172 F.RD. 271, 287-88 (S.D. Ohio 1997). In this regard, courts generally focus on the liability issues, and if these issues are common to the class, common questions may be held to predominate over individual questions.

*See Id.*

According to Seagraves, common questions of law and fact predominate. Among the common questions of law and fact are:

   a.   Whether Range Resources has engaged in a pattern or practice of not paying members of the Class for all of the hours overtime for each hour in excess of forty hours in a single week;

   b.   Whether Range Resources has engaged in the alleged wage violations uniformly regardless of locations worked;

   c.   Whether Range Resources violated Pennsylvania law by failing to compensate members of the Class all hours worked in excess of forty hours in a single workweek;

   d.   Whether Range Resources is liable for unpaid wages and overtime pay, liquidated damages, attorneys' fees, costs and interest; and

   e.   Whether this lawsuit should be maintained as a class action based on Range Resources' violations of Pennsylvania law.

Seagraves also believes that superiority is met because this settlement will resolve the pending lawsuits against Range Resources in a single, consolidated proceeding – obviating the need for multiple trials in multiple transferee venues – and, given Seagraves' argument regarding commonality of claims

relating to a standard policy of Range Resources there would be little or no interest for each class member to proceed with their own cases. Indeed, the plan of distribution here treats all equitably by providing payments based upon length of employment, a distribution that makes particular sense in a case such as this. Accordingly, strictly for the purposes of settlement, the Parties agree that individual variations in the type or magnitude of damage suffered by individual class members should not affect predominance, as the class representatives' position is that they have suffered the same type of damages – and seek the same type of relief – as all members of the proposed class.

Finally, Seagraves' position is that resolution of this litigation by class settlement is superior to the individual adjudication of class members' claims for compensatory relief. The Settlement provides the Class with an ability to obtain prompt, predictable and certain relief, whereas individualized litigation carries with it great uncertainty, risk and costs, and provides no guarantee that any injured Settlement Class Member will obtain necessary and timely relief at the conclusion of the litigation process. Settlement also would relieve judicial burdens that would be caused by adjudication of the same issues in what could be a dozen or more separate trials, including trials in each of the lawsuits being settled herein. Accordingly, strictly for purposes of the settlement posture in which the case now stands, the Class is appropriate and should be certified for settlement purposes only.

### C. The Proposed Notice Provides Adequate Notice To Members Of The Class

1. The Notice Satisfies Due Process

The Parties propose that a Settlement Administrator send, by First Class Mail, and Email, to each member of the Class, as defined above and in the Settlement Agreement, the Notice attached hereto as Exhibit. 1-A.

The Parties propose that the Notice be sent to all known and reasonably ascertainable members of the Class based on Range Resources' records and the criteria described in detail in the Settlement Agreement. The notices will be sent by First Class Mail and Email. The Settlement

16

Agreement provides that the Claims Administrator will endeavor to ensure that all members of the Class receive notice by taking all reasonable steps to trace the addresses of any member of the Class for whom a Notice Form is returned by the post office as undeliverable, including tracking of all undelivered mail and performing additional address searches.

This notice plan is consistent with class certification notices approved by numerous state and federal courts, and is, under the circumstances of this case, the best notice practicable. *See also, e.g.,* *Wright v. Linkus Enterprises, Inc.*, 259 F.R.D. 468, 476 (E.D. Cal. 2009) (holding notice involving same mail procedures as here meets both Rule 23(e) requirement that "proposed settlement is fundamentally fair, adequate, and reasonable" and "Rule 23(c)(2)(B) requirement that the Court direct 'best notice that is practicable under the circumstances'")(quoting FED.R.CIV.P. 23(c)(2)(B), (e)); *Davis v. Abercrombie & Fitch Co.*, No. 08 CV 01859(PKC)(AJP), 2009 WL 1542552, at *1-4 (S.D.N.Y. June 2, 2009)(approving issuance of notice to class using a similar method as applied here); *In re M.L. Stern Overtime Litig.*, No. 07-CV-0118-BTM (JMA), 2009 WL 995864, at *6-7 (S.D. Cal. Apr. 13, 2009)(finding similar mail procedure as applied here to be the "best notice practicable"); *Adams v. Inter-Con Security Sys., Inc.*, No. C-06-5428 MHP, 2007 WL 3225466, at *3-4 (N.D. Cal. Oct. 30, 2007)(finding that notice using same mail procedure as here "satisfies the notice requirements of Rule 23(e), and . . . all other legal and due process requirements").

2.  The Proposed Class Notices Are Accurate, Informative And Easy to Understand

Under Fed. R. Civ. P. 23(e), class members are entitled to notice of any proposed settlement before it is ultimately approved by the Court. Under Rule 23(e) and the relevant due process considerations, adequate notice must be given to all absent class members and potential class members to enable them to make an intelligent choice as to whether to opt-in to the federal class or opt-out of the state class. *See Prudential II*, 148 F.3d at 326-27; *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227 (9th

17

Cir. 1996). Similarly, pursuant to Section 16(b) of the FLSA, class members are entitled to notice to afford them with an adequate opportunity to opt-into the Action. 29 U.S.C. § 216(b).

Here, the proposed Notice provides clear and accurate information as to the nature and principal terms of the Settlement, including the monetary and other relief the settlement will provide members of the Class, the procedures and deadlines for opting out of the of the Settlement Class and submitting objections, the consequences of taking or foregoing the various options available to members of the Class, and the date, time and place of the final settlement approval hearing. *See* MANUAL FOURTH § 21.312. Pursuant to Fed. R. Civ. P. 23(h), the proposed Notice also sets forth the maximum amount of attorneys' fees and costs that may be sought by Plaintiff and his counsel. Accordingly, the Notice complies with the standards of fairness, completeness, and neutrality required of a settlement class notice disseminated under authority of the Court. *See, e.g.,* 4 Newberg on Class Actions (Fourth) §§ 8.21, 8.39; MANUAL FOURTH §§ 21.311-21.312.

### D.  A Final Fairness Hearing Should Be Scheduled

The Court should schedule a final fairness hearing to determine that final approval of the Settlement is proper within the next 90 days. The fairness hearing will provide a forum to explain, describe or challenge the terms and conditions of the Settlement, including the fairness, adequacy and reasonableness of the Settlement. Accordingly, the Parties request that the Court schedule the final fairness hearing.

### VI. PRELIMINARY AWARD OF ATTORNEYS' FEES AND COSTS

Pursuant to Rule 23(h) and Rule 54(d)(2), Seagraves' counsel seeks an award of attorneys' fees in the amount of $1,308,333.33 and costs in the amount of $13,448.09 from the Maximum Settlement Fund created by the Settlement. Further, Seagraves asks the Court to approve the estimated Settlement Administrator's costs that are estimated not to exceed $20,000.00. After extensive negotiation, Range

Resources agreed not to oppose Seagraves' counsel's application for these payments and costs from the Maximum Settlement Fund. *See* the Settlement Agreement, Exhibit 1.

### A. The Attorney Fees And Costs Requested Are Reasonable And Customary

Under Third Circuit law, a Court may evaluate the award of attorneys' fees through two established methods: (1) the lodestar approach; and (2) the percentage of the recovery approach. *In re Diet Drugs Prod. Liab. Litig.*, 582 F.3d 524, 540 (3d Cir. 2009); *In re AT&T Corp. Sec. Litig.*, 455 F.3d 160, 164 (3d Cir. 2006). Under the common fund doctrine, "a private plaintiff, or plaintiff's attorney, whose efforts create, discover, increase, or preserve a fund to which others also have a claim, is entitled to recover from the fund the costs of his litigation, including attorneys' fees." *In re Cendant Corp. Sec. Litig.*, 404 F.3d 173, 187 (3d Cir. 2005) (citation omitted). When calculating attorneys' fees in such cases, the percentage-of-recovery method is generally favored. *In re Diet Drugs*, 582 F.3d at 540 (citing *Krell v. Prudential Ins. Co.*, 148 F.3d 283, 333 (3d Cir. 1998)).

In determining what constitutes a reasonable percentage fee award in the Third Circuit, a district court must consider ten factors: (1) the size of the fund created and the number of beneficiaries; (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel; (3) the skill and efficiency of the attorney involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by plaintiffs' counsel; (7) the awards in similar cases; (8) the value of benefits attributable to the efforts of class counsel relative to the efforts of other groups, such as government agencies conducting investigations; (9) the percentage fee that would have been negotiated had the case been subject to a private contingent fee arrangement at the time counsel was retained; and (10) any innovative terms of Settlement. *In re Diet Drugs.* 582 F.3d at 541 (citing *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 195 (3d Cir. 2000) and *Prudential,* 148 F.3d at 342).

These factors support approval of the requested fee and are discussed below.

19

1. <u>The Size Of The Fund Created And The Number Of Beneficiaries, As Well As The Value Of The Benefits Supports The Requested Fee</u>

The results obtained represent a significant benefit in the face of the many legal and factual risks posed by litigation. Here, the $3,925,000 Settlement provides for a Net Settlement Fund that will be distributed to Settlement Class Members on a *pro rata* basis.

More specifically, the Maximum Settlement Amount is based on an analysis of each workweek that each Class Member worked for Range Resources during the relevant time period. The Maximum Settlement Amount represents a substantial portion of unpaid overtime damages owed to FLSA and Pennsylvania Class Members. For these reasons, the Settlement creates a substantial benefit for members of the Settlement Class. Dunlap Decl. at ¶¶ 24-34, Ex. 2.

2. <u>The Skill and Efficiency of Class Counsel That Enabled Them to Obtain This Result Supports the Requested Fee</u>

In evaluating the skill and efficiency of the attorneys involved, courts have looked to "the quality of the result achieved, the difficulties faced, the speed and efficiency of the recovery, the standing, experience and expertise of the counsel, the skill and professionalism with which counsel prosecuted the case and the performance and quality of opposing counsel." *Chemi v. Champion Mortg.*, C.A. 05-cv-1238, 2009 WL 1470429, at *11 (D.N.J. May 26, 2009) (internal quotations omitted).

Here, Class Counsel includes attorneys with significant employment law as well as class and collective action experience. *See* Dunlap Decl. at ¶¶3-11, Ex. 2. Class Counsel assumed a very real risk in taking on this case. Class Counsel took the case on a contingency basis, and was prepared to invest time, effort, and money over a period of years with no absolutely no guarantee of any recovery. *Id.* at ¶ 8.

The Settlement reached with Range Resources, which involves complex provisions that are specific to Section 216(b)'s collective action provision of the FLSA and state wage and hour law, is a reflection of Class counsel's experience. *See Id.* at ¶¶ 3-17. This Settlement was reached after (1)

20

extensive fact discovery, including exchanging numerous pages of documents; (2) a notice and opt-in period; and (3) a full day of mediation with experienced wage and hour mediator Carole Katz, which included follow up arm's length negotiations between counsel for the parties. *Id.* at ¶¶ 17-21.

The Settlement provides Seagraves and members of the Settlement Classes with substantial benefits without having to wait for years of drawn out litigation. Accordingly, this factor favors the requested fee.

3.  The Awards In Similar Cases Supports The Requested Fee

The requested fee is also consistent with awards in similar cases. *See* Dunlap Decl. at ¶ 31, Ex. 2. The Third Circuit has noted that fee awards generally range from 19% to 45% of the Settlement fund. *See Brumley v. Camin Cargo Control, Inc.,* No. CIV.A. 08-1798 JLL, 2012 WL 1019337, at *12 (D.N.J. Mar. 26, 2012) (approving fee of one-third of the common fund and citing *In re Gen. Motors Pick–Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 822 (3d Cir. 1995)).

Here, Class Counsel's request for one third (thirty-three and one-third percent) of the Maximum Settlement Fund falls well within the range of reasonable allocations in the context of awards granted in other, similar cases. *See, e.g., Stivers v. Office Depot*, No. 12-cv-1534 (W.D. Pa. Sept. 19, 2013) (Eddy, J.) (approving fee award of 33.33% of the total settlement amount to class counsel in wage and hour settlement); *Caudell v. RDL Energy Services, LP*, No. 2:11-cv-01523-JFC (W.D. Pa. Jul. 30, 2012) (Conti, J.) (same); *Bearden v. Precision Air Drilling Services, Inc.*, No. 2:11-cv-01511- NBF (W.D. Pa. Sept. 26, 2012) (Fischer, J.) (same); *Thomas v. Allis-Chalmers*, No. 2:10-cv- 01591-RCM (W.D. Pa. Sept. 11, 2012) (Mitchell, J.) (same); *Bredbenner v. Liberty Travel, Inc.*, 2011 WL 1344745 (D.N.J. Apr. 8, 2011) (approving an award of 32.6% of the Settlement fund); *Erie County Retirees Assoc. v. County of Erie. Pa.*, 192 F. Supp. 2d 369, 382-83 (W.D. Pa. 2002) (McLaughlin, J.) (38% of common fund awarded as fees in ADEA collective action case brought pursuant to 29 U.S.C. §216(b)); *see also Cullen v. Whitman Medical Corp.*, 197 F.R.D. 136, 150 (E.D. Pa. 2000) (concluding "that an award of one third of the

21

Settlement fund is reasonable in consideration of other courts' awards"); *Williams v. Aramark Sports, LLC*, No. 10-cv-1044, 2011 WL 4018205, at \*10 (E.D. Pa. Sept. 9, 2011) (noting that study of class action fee awards within the Third Circuit found that average attorney's fees percentage in such cases was 31.71% and median award was 33.3%). The attorneys' fees request of thirty-three and one-third percent of the Settlement fund also comports with privately negotiated contingent fees negotiated on the open market. *See Bredbenner*, 2011 WL 1344745, at \*21.

Accordingly, the fees approved in similar cases further support the requested fee here.

4.   Class Counsel's Costs Should Be Approved

In addition to being entitled to reasonable attorneys' fees, the FLSA and Pennsylvania wage and hour law provides for the reimbursement of costs. *See* 29 U.S.C. § 216(b); 43 P.S. § 333.113 ("worker may recover in a civil action the full amount of such minimum wage less any amount actually paid to the worker by the employer, together with costs and such reasonable attorney's fees as may be allowed by the court…").

Here, Class Counsel's costs are $13,448.09. Class Counsel's costs include reasonable out-of-pocket expenditures such as filing fees, travel for hearings, mediation, client meetings, and Westlaw. *See* Ex. 2, at ¶ 33. *See Oh v. AT&T Corp.*, 225 F.R.D. 142, 154 (D.N.J. 2004) (finding expenses such as "(1) travel and lodging, (2) local meetings and transportation, (3) depositions, (4) photocopies, (5) messengers and express service, (6) telephone and fax, (7) Lexis/Westlaw legal research, (8) filing, court and witness fees, (9) overtime and temp work, (10) postage, (11) the cost of hiring a mediator, and (12) NJ Client Protection Fund–*pro hac vice*" to be reasonable).

All of these expenses were reasonable and necessary for the successful prosecution of this case, and pursuant to the terms of the Settlement Agreement, Range Resources does not object to the request for costs.

**B.  This Settlement Is On Par With Recent Settlements Involving Oil and Gas Companies**

The Court should finally approve this Settlement because it is in line with recent wage and hour settlements involving oil and gas service companies. In *Terry v. Tri-State Wireline, LLC*, Judge Fischer approved a class and collective action settlement involving wireline operators paid a salary and a job bonus. *Terry*, C.A. 2:15-cv-00382-NBF, ECF No. 31 (W.D. Pa. Jan. 14, 2016). In that case, the Court approved attorney fees of 35%, $25,000.00 in attorney costs, $5,500.00 in settlement administration costs, and $20,000.00 in enhancement awards. The Court held that the settlement was substantially fair and reasonable under the applicable Third Circuit jurisprudence. *See also Frost v. Oil States Energy Services, LLC*, C.A. 4:15-cv-01100, ECF No. 43 (S.D. Tex. Nov. 19, 2015). (approving a class and collective action settlement involving oil and gas employees paid a salary and/or job bonuses); *Hickel, et al., v. Costy's Energy Services, LLC*, C.A. 2:15-cv-00130-MRH, ECF No. 43 (W.D. Pa. Oct. 30, 2015) (approving a collective action settlement involving oil and gas employees alleging violations of the regular rate for purposes of calculating overtime); *Smiley, et al., v. ROC Service Company, LLC*, C.A. 2:14-cv-01539-CRE, ECF No. 53 (W.D. Pa. Sept. 22, 2015); (approving a class and collective action settlement involving oil and gas employees paid a salary and/or job bonuses); *Andrews, et al., v. Pacific Process Systems, Inc.*, C.A. 2:14-cv-01308-CRE (W.D. Pa. Sept. 10, 2015) (same).

## VII.     CONCLUSION

For the foregoing reasons, the Parties respectfully request that this Court (i) approve the form and content of the proposed Notice and the manner and method of distributing notice of this Settlement to the Class; (ii) direct the mailing and e-mailing of the Notice to members of the Class; (iii), preliminarily approve the Settlement, (iv) preliminarily certify the Class for purposes of Settlement only; (v) approve Class Counsel and the named Plaintiff to represent the Class; and (vi) set a date for a Fairness Hearing.

23

Respectfully submitted,

By: /s/ *Andrew W. Dunlap*
    Michael A. Josephson
    Pennsylvania Bar No. 308410
    Fed. Id. 27157
    Andrew Dunlap
    Fed Id. 1093163
    Texas Bar No. 24078444
    (*Admitted Pro Hac Vice*)
    **JOSEPHSON DUNLAP LAW FIRM**
    11 Greenway Plaza, Suite 3050
    Houston, Texas 77005
    Tel: (713) 352-1100
    Fax: (713) 751-0030
    mjosephson@mybackwages.com
    adunlap@ mybackwages.com

    AND

    Joshua P. Geist
    PA. I.D. No. 85745
    **GOODRICH & GEIST, P.C.**
    3634 California Ave.
    Pittsburgh, PA 15212
    Tel: 412-766-1455
    Fax: 412-766-0300
    josh@goodrichandgeist.com

    AND

    Richard J. (Rex) Burch
    Texas Bar No. 24001807
    Fed. Id. 21615
    (*Pending Pro Hac Vice*)
    **BRUCKNER BURCH, P.L.L.C.**
    8 Greenway Plaza, Suite 1500
    Houston, Texas 77046
    713-877-8788 – Telephone
    713-877-8065 – Facsimile
    rburch@brucknerburch.com

    **ATTORNEYS IN CHARGE FOR PLAINTIFFS**

24

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was served by ECF electronic filing on all known parties.

/s/ Andrew W. Dunlap
Andrew W. Dunlap


## CERTIFICATE OF CONFERENCE

I hereby certify that I have spoken with Counsel for Defendant and Defendant is in agreement with the contents of this Motion.

/s/ Andrew W. Dunlap
Andrew W. Dunlap

25